IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| EDDIE RICHARDS, as personal representative of now deceased James Lewis Kennedy, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 2:19-CV-845-KFP ) |
| JOSEPH HEADLEY, | ) ) |
| Defendant. | ) |

# MEMORANDUM OPINION AND ORDER

Plaintiff Eddie Richards brings this action as the personal representative of James Kennedy, deceased, against Joseph Headley, who was the warden of the Elmore Correctional Facility when Kennedy was killed by another inmate, Patrick Smith. Doc. 1. The Complaint contains a claim of deliberate indifference under 42 U.S.C. § 1983 and a state law wrongful death claim, and it seeks compensatory and punitive damages. *Id*. at 7, 11. The Complaint has not been amended. Defendant filed a Motion for Summary Judgment (Doc. 50), Motion to Exclude Plaintiff's Expert Witness (Doc. 53), and Motion to Strike (Doc. 64). Upon consideration of the motions, briefing by both parties, and applicable law, the Court concludes that the Motion for Summary Judgment is due to be granted, rendering the two remaining motions moot.

I.     STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, a reviewing court must "grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). "An issue is 'material' if it might affect the outcome of the case under the governing law." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do

more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

If the nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," the court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3). In determining whether a genuine issue for trial exists, the court must view all the evidence in a light most favorable to the nonmovant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-99 (11th Cir. 1992) (internal citations and quotations omitted). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted). Furthermore, "[a] mere 'scintilla' of

3

evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249–50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

## II.   BACKGROUND AND UNDISPUTED MATERIAL FACTS

The Complaint alleges that Patrick Smith had been transferred from the Easterling Correctional Facility to the Elmore Correctional Facility because of numerous discipline problems he caused. Doc. 1 ¶ 7. After this transfer, James Kennedy "conveyed his acute need of and request for security and protection from death threats made against his life by inmate Smith." *Id*. ¶ 9. Kennedy verbally conveyed and completed reports and request forms to Headley, along with several shift guards, shift captains, shift supervisors, and the prison staff, seeking safety and protection from death threats made by Smith against Kennedy. *Id*. ¶¶ 10-11. However, Kennedy was never given any protection from Smith's "acute and critical death threats." *Id*. ¶ 11. Finally, the Complaint alleges that Headley used "rogue" policies and practices that were "formulated and implemented outside of the Alabama Department of Corrections' chain-of-command." *Id*. ¶ 12.

Defendant's brief sets forth the following facts as undisputed. On November 18, 2018, Smith's cell phone was confiscated. Doc. 51 at 2. Later that morning, Smith and a group of inmates were involved in a confrontation that resulted in Kennedy, Smith, and at least one other inmate being stabbed. *Id*. Kennedy died from his stab wounds. *Id*. Warden Headley, who worked at the prison from April 2016 to May 2019, was not at the prison

4

that day. *Id*. Warden Headley never received information about threats made by Smith against any person at Elmore, never received a complaint from Kennedy that Smith had threatened him, and never received information or a report that Kennedy had concerns for his safety at Elmore. *Id*. at 3. ADOC has regulations for the operation of all facilities, and Elmore was in compliance with those regulations during Warden Headley's tenure at the facility. In his response, Plaintiff does not object to these facts or otherwise address them. Therefore, for purposes of summary judgment, they are undisputed. *See* Rule 56(e)(2).

In his response, Plaintiff asserts that the undisputed facts, when viewed in a light most favorable to Plaintiff, show that Warden Headley "had actual knowledge of numerous prior inmate-on-inmate stabbing assaults and homicides" in Kennedy's dormitory at the correctional facility but "was deliberately indifferent to the regularly occurring inmate-on-inmate assaults and homicides . . . and took absolutely no action to protect [Kennedy] or any other inmate. . . ." Doc. 61 at 1–2. He cites to Warden Headley's deposition testimony stating that all inmate-on-inmate assaults were brought to his attention, and he cites to a U.S. Department of Justice's Report on Alabama State Prisons for Men documenting six prisoner-on-prisoner assaults at the Elmore Correctional Facility in 2017, four of which resulted in an inmate's death and two of which resulted in hospitalization. Doc. 61 at 6–7. He also submitted two civil complaints filed against Warden Headley to show that Warden Headley had knowledge of inmate-on-inmate violence; the declaration of an inmate at the Elmore Correctional Facility attesting to inmate-on-inmate violence; and the declaration of Patrick Smith, the inmate who murdered Kennedy, also attesting to inmate-on-inmate violence at the facility. *See* Doc. 62.

5

## III. DISCUSSION

Plaintiff's summary judgment response makes no mention of Kennedy's alleged specific requests for protection from Smith that were described in the Complaint. Instead, the entire basis of liability for Plaintiff's claims, as argued in summary judgment briefing, is Warden Headley's alleged general knowledge of inmate-on-inmate violence and failure to prevent it. Plaintiff states in his brief that the Complaint makes certain allegations against Warden Headley about inmate-on-inmate assaults and homicides and the failure to adhere to operational protocol and procedures, but it does not. *See* Doc. 61 at 3–4. The only factual basis for Plaintiff's claims in the Complaint are the specific communications by Kennedy to Warden Headley and other prison employees regarding his "acute need of and request for security and protection from death threats made against his life by inmate Smith" and Warden Headley's implementation of "rogue" policies and practices that were "formulated and implemented outside of the Alabama Department of Corrections' chain-of-command." *See* Doc. 1.

A plaintiff generally cannot change the basis of his claims at the summary judgment stage. *See Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) ("[A]t the summary judgment stage, the proper procedure for plaintiff to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. Proc. 15(a)." (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004))). In *Banks v. Marketsource, Inc.*, No. 1:18-CV-2235-WMR-JSA, 2019 WL 8277274, at *6 (N.D. Ga. Dec. 5, 2019), *report and recommendation adopted,* No. 1:18-CV-02235-WMR, 2020 WL 6291422 (N.D. Ga. Mar. 20, 2020), the plaintiff brought FMLA interference and retaliation

claims, among others, against the defendant. In the complaint, she alleged the defendant interfered and retaliated against her with respect to full-time leave she took from mid-June through July 2017. *Id.* She alleged the defendant harassed her while she was on full-time leave and terminated her when she returned. *Id.* at *7. In her summary judgment response, she presented a different factual basis for her claims, alleging the defendant failed to advise her of her rights, retaliated against her for taking 30-minute breaks at work in June 2016, and denied her intermittent leave before she took the full-time leave referenced in the complaint. *Id.* at *6–7. She even went so far as to deny any claims related to the harassment described in her complaint, thus alleging the defendant violated her rights in a different manner altogether than what was described in the complaint. *Id.* In ruling on summary judgment, the court set forth the applicable law as follows:

> "[T]he Court can only consider the claims and theories of liability that Plaintiff actually pled in her complaint." *Wilcox v. Green Tree Servicing, LLC*, No. 8:14-CV-1681-T-24 TGW, 2015 WL 2092671, at *1 (M.D. Fla. May 5, 2015) (collecting authorities). A plaintiff may not recast the scope of her claims beyond the extent to which the pleadings give notice of what actions the plaintiff contends to be unlawful. *See Flanigan's Enters., Inc. of Ga. v. Fulton Cty.*, 242 F.3d 976, 988 (11th Cir. 2001), *superseded on other grounds, Buehrle v. City of Key West*, 813 F.3d 973, 980 n.3 (11th Cir. 2015) (holding that plaintiffs could not bring a constitutional challenge to an entire licensing scheme at the summary judgment stage where pleadings challenged only one section of it). Thus, a plaintiff may not permissibly substitute an entirely new factual predicate for a claim at the summary judgment stage without amending her pleadings. *See Soloski v. Adams*, 600 F. Supp. 2d 1276, 1365 (N.D. Ga. 2009) (holding that a plaintiff could not pursue his Title VII retaliation claim based on a complaint to a supervisor where his complaint grounded the claim on his filing of a complaint with the EEOC). And, of course, a plaintiff may not amend her pleadings via a response to a motion for summary judgment. *See Gilmour v. Gates, McDonald & Co.*, 362 F.3d 1312, 1315 (11th Cir. 2004) (*per curiam*).

*Id.* at *6. The plaintiff argued the new factual basis for her claims "simply elaborate[d] on the factual underpinnings of the claims in the complaint and that a complaint is not required to detail every fact to support her claims." *Id*. at *7. However, the court found the summary allegations did not "merely expound[] upon an otherwise properly noticed claim" but instead "significantly modifie[d] the claim beyond anything Plaintiff gave notice of in her Complaint." The complaint gave notice of two ways the defendant had violated FMLA: by harassing the plaintiff while on full-time leave and terminating her upon return. It made no mention of intermittent leave. The actions in the complaint were "not worded as mere non-exclusive examples of some ways in which Defendant interfered with Plaintiff's FMLA rights; rather, the Complaint clearly identifie[d] these actions as the specific ways in which the Defendant violated the statute." *Id*. The same was true for her retaliation claim. The complaint alleged the defendant retaliated by terminating her after she requested and took approved FMLA leave, but her summary judgment response argued that the protected activity for purposes of her FMLA claim was the request for intermittent leave.

Because the plaintiff's new summary judgment theory relied on a different leave and a different protected activity than described in her complaint, the court found she was seeking to "fundamentally change the basic factual theory upon which the claims were pleaded and upon which discovery progressed." It was not "just 'elaboration' as to evidentiary detail [but] a moving of the goalposts, and this is not permitted at summary judgment." *Id*. (citations omitted).

In *Hurlbert* cited above, the complaint alleged an FMLA violation arising out of the plaintiff's serious health condition. *Hurlbert*, 439 F.3d at 1297. At the summary judgment

8

stage, plaintiff changed the basis of his claims and argued that he was entitled to FMLA leave to care for his mother, who was recovering from heart surgery. The Eleventh Circuit held that the district court had correctly rejected this argument:

> Hurlbert argues . . . his allegations about his mother do not raise a new "claim," and are merely additional facts asserted in support of the interference claim already pled in his complaint. We disagree. The sole basis for entitlement to FMLA leave pled in Hurlbert's interference claim was *his* alleged serious health condition. *See* 29 U.S.C. § 2612(a)(1)(D). Thus, the subsequent assertion of an additional, separate statutory basis for entitlement to leave (caring for a *parent's* serious health condition) effects a fundamental change in the nature of Hurlbert's interference claim. *See id.* at § 2612(a)(1)(C). Having proceeded through discovery without amending (or seeking to amend) his complaint to reflect that fundamental change, Hurlbert was not entitled to raise it in the midst of summary judgment.

*Id.; see also Mena v. McArthur Dairy, LLC,* 352 F. App'x 303, 307–09 (11th Cir. 2009) (when plaintiff sought unpaid overtime in complaint but argued for minimum wage and straight-time pay for first time on summary judgment, affirming summary judgment because the plaintiff had never previously "articulated an argument that should have put [the defendant] on notice of this theory of liability"); *Tindol v. Ala. Dep't of Revenue,* No. 13-CV-92-WKW, 2015 WL 350623, at *24–25 (M.D. Ala. Jan. 23, 2015) (where complaint pleaded that a contract was based on the defendant's policies, procedures, and handbooks, rejecting plaintiff's attempt at summary judgment to rely also on alleged oral statements as creating the contract and stating, "[plaintiff] is bound to the complaint that he pleaded and which he chose not to amend, and he may not change the theories upon which he seeks relief through summary judgment briefing."); *Johnson v. Lerner*, No. 08-61344-CIV, 2009 WL 3187110, at *8–9 (S.D. Fla. Sept. 30, 2009) (where complaint alleged that defendant committed tort against plaintiff by hitting him on top of head with

flashlight, refusing to allow plaintiff to rely at summary judgment on assertion that defendant struck him in the mouth because defendant was not on notice of need to gather discovery as to damages relating to new theory).

The Court is aware of *Corbitt v. Walgreen Co.*, No. 7:14-CV-17 MTT, 2015 WL 1726011, at *4 (M.D. Ga. Apr. 15, 2015), where a court rejected a defendant's contention that a plaintiff's arguments about non-compliance with its own policies fell outside the scope of the complaint. The court found the plaintiff was not attempting to assert an entirely new claim in her summary judgment response but, instead, was asserting additional facts relevant to the negligence claim in her complaint. Also, the defendant was questioned about the defendant's policies in his deposition, so there was no issue of lack of notice. Finally, the court found the plaintiff was not arguing that the policies in and of themselves provided a basis for liability, as they were relevant to but not dispositive of her claim.

Unlike *Corbitt*, in this case, Plaintiff's allegations of inmate-on-inmate violence *are* dispositive of the claims in the Complaint, as he has completely abandoned the factual basis described in the Complaint and supplanted it with an entirely new set of facts. On summary judgment, Plaintiff has asserted no argument and identified no material factual dispute to move forward on the claims alleged in the Complaint—based on Warden Headley's alleged specific knowledge of threats made against Plaintiff. The newly minted theory provides no basis for the Court to deny summary judgment. Additionally, while neither party submitted Warden Headley's deposition transcript to support their summary judgment positions, the transcript was filed as part of Plaintiff's evidentiary submission in opposition to Defendant's Motion to Exclude Plaintiff's Expert Witness. *See* Doc. 56. To

the extent this evidence is properly before the Court,[1] after reviewing the transcript, the Court finds that the handful of questions regarding inmate-on-inmate violence would not place Defendant on notice that Plaintiff was completely amending his theory of liability.[2] Additionally, the actions alleged in the Complaint are not described as non-exclusive examples of a greater course of conduct. The Complaint alleged one way that Defendant was guilty of deliberate indifference and wrongful death: by ignoring *specific* communications from Kennedy to Warden Headley and other prison officials regarding *specific* threats to Kennedy by Smith. The facts alleged in Plaintiff's summary judgment response are not an elaboration of evidentiary details; they are an impermissible attempt to "move the goalposts" by substituting an entirely new factual predicate for his claims at the summary judgment stage without amending his pleadings. As mentioned above, the Court can consider only the claims and theories of liability actually pleaded in the Complaint. The parties proceeded through discovery based on claims and theories of liability in the original Complaint, and Plaintiff is not entitled to raise new factual allegations for the

---

[1] The Court clearly has discretion to examine the record in deciding summary judgment motions. *See Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151 (11th Cir. 2012) ("District Court must consider all evidence in the record when reviewing a motion for summary judgment—pleadings, depositions, interrogatories, affidavits, etc."); *see also Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 337 (5th Cir. 2017) ("[T]he district court should construe the procedural rules with a preference toward resolving the case on the merits and avoiding any dismissal based on a technicality.")

[2] In the deposition transcript (Doc. 56), Plaintiff's counsel asked Warden Headley several general questions about the 2019 Department of Justice Findings (Dep. at 30); physical assaults or homicides in the facility (Dep. at 31, 35, 59); the number of inmates and correctional officers (Dep. at 32); the mandatory minimum number of correctional officers and if that was sufficient (Dep. at 38–39, 47–48); and whether there were any homicides at the facility while Warden Headley was there (Dep. 59). With the benefit of hindsight, all of these questions can be construed as relevant to the new factual allegations made in Plaintiff's summary judgment response; however, most of them are also relevant to the allegations in the Complaint. On the whole, and because the remainder of the sixty-page deposition addressed the facts pleaded in the Complaint, the Court cannot say Defendant was fairly put on notice through deposition questioning that Plaintiff would be shifting his theory of liability and basing it on facts not pleaded in the Complaint.

purpose of changing the basis of his legal theories at the summary judgment stage. *Hurlbert*, 439 F.3d at 1297.

## IV. CONCLUSION

For the reasons stated above, Warden Headley is entitled to judgment as a matter of law on all claims and causes of action asserted against him in the Complaint.

DONE this 2nd day of July, 2021.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE